In the Matter of the Judicial Settlement of the Estate of
WILLIAM MOORE, Deceased.

SUSAN ROBERTS et al., Appellants; WILLIAM L. MOORE et al.,
Respondents.

1. WILL — DEVISE BY IMPLICATION TO LINEAL HEIRS OF TESTATOR'S
SONS. Where the will of a widower, whose only children were two sons,
unmarried at the date of the will, gives the use and occupancy of the
estate, real and personal, to the testator's two sons, and the survivor of
them, during life, and gives the estate, after the death of the " two sons
and their heirs, if they have any," to the testator's brothers and sisters, it
is to be deemed that the " heirs " of the sons referred to were intended to

be their heirs of the body, and that the testator intended the estate to vest in such heirs; and they must be deemed to take an estate by implication.

2. REMAINDER LIMITED ON DEATH WITHOUT HEIRS — DEVISE OF FEE TO SURVIVING HEIRS. By such a provision, construed in accordance with the statute (1 R. S. 724, § 22), the testator is to be deemed to have intended to create a remainder in his brothers and sisters after the death of his two sons only in case the sons left no heirs of the body; and in case the sons leave heirs of the body them surviving, then such heirs take the entire estate, the realty in fee and the personalty absolutely.

*Matter of Moore,* 88 Hun, 621, affirmed.

(Argued March 19, 1897; decided April 20, 1897

APPEAL by the remaindermen from a judgment of the General Term of the Supreme Court in the third judicial department, entered September 18, 1895, which affirmed a decree of the surrogate of Clinton county finally settling the accounts of Andrew Stafford, as executor of William Moore, deceased.

The facts, so far as material, are stated in the opinion.

*T. F. Conway* for appellants. By the seventh clause of testator's will his sons, Richard and Alonzo, were given life estates, share and share alike, in his real property and in the interest of his personal property as tenants in common, with cross-remainders; the heirs referred to were children which might be born to the sons, and they take, if anything, under the will, life estates by implication in testator's estate. (*Lytle* v. *Beveridge,* 58 N. Y. 592; *Bundy* v. *Bundy,* 38 N. Y. 410; *Scott* v. *Guernsey,* 48 N. Y. 122; *Hard* v. *Ashley,* 117 N. Y. 606; *In re Logan,* 131 N. Y. 460; *Quinn* v. *Hardenbrook,* 54 N. Y. 86; *Drake* v. *Lawrence,* 19 Hun, 112; *Johnson* v. *Brasington,* 86 Hun, 106; *In re Vowers,* 113 N. Y. 569; *Bradhurst* v. *Field,* 135 N. Y. 564.) The estate created, or attempted to be created, in the heirs of testator's sons, being a life estate, was void in its creation under our statutes. (4 R. S. [8th ed.] 2516, §§ 1, 2, 17; *Hone* v. *Van Schaick,* 7 Paige, 222; *Gott* v. *Cook,* 7 Paige, 523; *Campbell* v. *Foster,* 35 N. Y. 372; *Cruikshank* v. *Home for the Friendless,* 113 N. Y. 337; *Phelps, Exr.,* v.

*Pond*, 23 N. Y. 83; *Purdy* v. *Hayt*, 92 N. Y. 446; *Hawley* v. *James*, 16 Wend. 21; *Gilman* v. *Reddington*, 24 N. Y. 9; *Manice* v. *Manice*, 43 N. Y. 303.) The estates given by the testator's will to his brother and sisters named and their heirs were vested, valid remainders, and are not affected by the Statute of Perpetuities. (4 R. S. [1st ed.] 2431, §§ 11, 13; *Manice* v. *Manice*, 43 N. Y. 368; *Greenland* v. *Waddell*, 116 N. Y. 244; *Warner* v. *Durant*, 76 N. Y. 136; *Smith* v. *Edwards*, 88 N. Y. 103; *Nelson* v. *Russell*, 135 N. Y. 137; *Kane* v. *Gott*, 24 Wend. 662; *Phelps, Exr.*, v. *Pond*, 23 N. Y. 81; *Schettler* v. *Smith*, 41 N. Y. 328; *Purdy* v. *Hayt*, 92 N. Y. 446; *Shipman* v. *Rollins*, 98 N. Y. 311.) The will creates no trust which prevents the vesting of the remainders. (*Kane* v. *Gott*, 24 Wend. 641; *Smith* v. *Edwards*, 88 N. Y. 102; *Everitt* v. *Everitt*, 29 N. Y. 78; *Manice* v. *Manice*, 43 N. Y. 363; *Gilman* v. *Reddington*, 24 N. Y. 15; *Bell* v. *Warn*, 4 Hun, 406.) Assuming that the testator's intention was to give the absolute estate to his sons' heirs, yet the one-half given to Richard for life, who died first leaving no heir, does not go to the heirs of Alonzo, but passes to the remaindermen, under the provisions of the will. (*Everitt* v. *Everitt*, 29 N. Y. 39; *Campbell* v. *Rawdon*, 18 N. Y. 412; *Hillyer* v. *Vandewater*, 31 N. Y. S. R. 671; *Purdy* v. *Hayt*, 92 N. Y. 446; *Vanderpoel* v. *Loew*, 112 N. Y. 167; *Dana* v. *Murray*, 122 N. Y. 613; *In re Verplanck*, 91 N. Y. 439; *Vanderzee* v. *Slingerland*, 103 N. Y. 47; *Norris* v. *Beyea*, 13 N. Y. 285; *Nellis* v. *Nellis*, 99 N. Y. 505.) The legacy of $200 to Maria Roberts, who died in the lifetime of the testator, her daughter, Susan Roberts, and her infant grandchildren, Bessie Allen, Kittie Allen, Susie Allen and Georgie Allen, now claim. The surrogate erred in disallowing it. (*Barnes* v. *Hudson*, 66 Barb. 598.)

*Francis A. Smith* for appellants. It was the intention of the testator to give his two sons equal undivided life estates in both the real and personal property, with remainder to the survivor for life. And this is plainly so for the reason that

he gives them only the use and income, permitting the principal to be drawn upon to supply any lack for ample support, and attempts to give the remainder, upon the termination of their respective lives. to other persons, either for life or in fee. There is an implied estate for life in the two sons, because the testator assumes to dispose of all the property, after their death. It is clear that the clause " and their heirs, if they have any," must mean the children of the testator's two sons. (*Norris* v. *Beyea,* 13 N. Y. 283; *Sweet* v. *Chase,* 2 N. Y. 73; *Harrison* v. *Harrison,* 36 N. Y. 543; *Purdy* v. *Hayt,* 92 N. Y. 446; *Manice* v. *Manice,* 1 Lans. 364; *Everitt* v. *Everitt,* 29 N. Y. 39.) There was no suspension of the power of alienation beyond the statutory limit, whatever construction be given to the clause in question. (1 R. S. 723, §§ 14, 15; *Purdy* v. *Hayt,* 92 N. Y. 449.) If it could be maintained that the future estates alleged to be given by implication to Alonzo's children, were contingent, and, therefore, that there was an illegal suspension of the power of alienation, this would effect only one-half of the estate, real and personal, and the other half devised and bequeathed for life to Richard, must be held, under the undisputed terms of the clause, to have passed upon the death of Richard, without heirs or children, to the remaindermen named, the appellants here. (1 R. S. 727, § 44; *Campbell* v. *Rawdon,* 18 N. Y. 412; *Everitt* v. *Everitt,* 29 N. Y. 39; *Purdy* v. *Hayt,* 92 N. Y. 446; 1 R. S. 723, §§ 13, 17; *Moore* v. *Littel,* 41 N. Y. 76; *Kilpatrick* v. *Johnson,* 15 N. Y. 324; *Cook* v. *Lowry,* 95 N. Y. 103.) The claim that the will gives the grandchildren a fee by implication is without support either in law or reason, and is in fact expressly overruled by repeated decisions of the Court of Appeals. (*In re Vowers,* 113 N. Y. 569; *Masterson* v. *Townshend,* 123 N. Y. 461; *Bradhurst* v. *Field,* 135 N. Y. 564; *Norris* v. *Beyea,* 13 N. Y. 283; *Sweet* v. *Chase,* 2 N. Y. 73; *Harrison* v. *Harrison,* 36 N. Y. 543.)

*Lucien L. Shedden* for respondents. The surrogate has power to construe the will when necessary to determine ques-

tions arising on the accounting of the executors. (*Purdy* v. *Hayt*, 92 N. Y. 446.) The intent of the testator should first be ascertained. (1 R. S. 828, § 36; 4 Kent's Comm. 535; *Scott* v. *Guernsey*, 48 N. Y. 120; *Ritch* v. *Hawxhurst*, 114 N. Y. 515; *In re James*, 146 N. Y. 78; Schouler on Wills, § 466; Redfield's Surr. Prac. 231; 4 Johns. 61; *Shulters* v. *Johnson*, 38 Barb. 80; *Terpening* v. *Skinner*, 30 Barb. 373; *White* v. *Hicks*, 33 N. Y. 383; *Kalbfleisch* v. *Kalbfleisch*, 67 N. Y. 354; *Terpening* v. *Skinner*, 29 N. Y. 508.) The law favors a construction that will not tend to disinherit an heir. (*Scott* v. *Guernsey*, 48 N. Y. 121; *Vanderzee* v. *Slingerland*, 103 N. Y. 54; *Quinn* v. *Hardenbrook*, 54 N. Y. 83; *Lynes* v. *Townsend*, 33 N. Y. 558; *Greyston* v. *Clark*, 41 Hun, 125; *Cromwell* v. *Kirk*, 1 Dem. 383; *Nellis* v. *Nellis*, 99 N. Y. 505; 46 Hun, 261; *N. Y., L. & W. R. Co.* v. *Van Zandt*, 105 N. Y. 89; *Palmer* v. *Dunham*, 52 Hun, 468.) An estate to the heirs of Richard and Alonzo is implied. (*Lytle* v. *Beveridge*, 7 Lans. 225; 58 N. Y. 592; *Perrin* v. *Blake*, 4 Burr. 2579; *In re Vowers*, 113 N. Y. 569; *Macy* v. *Sawyer*, 66 How. Pr. 381; *Masterson* v. *Townshend*, 123 N. Y. 462; *Whitney* v. *Whitney*, 63 Hun, 69; *Bentley* v. *Kaufman*, 12 Phila. 435; *Still* v. *Spear*, 3 Grant's Cas. 435; 1 Jarman on Wills [6th ed.], 556.) The estate given by implication to the heirs of the testator's sons is a fee and not a life estate merely. (*Campbell* v. *Rawdon*, 18 N. Y. 419; 2 R. S. 2528, § 89; 2 Washb. on Real Prop. chap. 4, § 3; *Norris* v. *Beyea*, 13 N. Y. 273; *Low* v. *Harmony*, 72 N. Y. 414; *Lynes* v. *Townsend*, 33 N. Y. 561; *Newcomb* v. *Lush*, 84 Hun, 259; *Taggart* v. *Murray*, 53 N. Y. 238; *Lytle* v. *Beveridge*, 58 N. Y. 605; *Peckham* v. *Lego*, 57 Conn. 553; *Cossell* v. *Cook*, 3 S. & R. 290; *Du Bois* v. *Ray*, 35 N. Y. 162.) The heirs of the bodies of the testator's two sons (provided they were all in the first degree of descent) were to take as a class, *per capita*, and not *per stirpes*, and as the two children of Alonzo composed such class at the time for distribution under the will they take the whole property. (*In re Kimberly*, 150 N. Y. 93; *Manier* v. *Philips*, 15 Abb.

[N. C.] 123 ; *Barber* v. *Cary*, 11 N. Y. 401 ; *Moore* v. *Littel*, 41 N. Y. 66 ; *In re Verplanck*, 91 N. Y. 445 ; *Vanderzee* v. *Slingerland*, 103 N. Y. 47 ; *Fowler* v. *Ingersoll*, 127 N. Y. 472 ; *Mead* v. *Maben*, 131 N. Y. 255 ; *Mullarky* v. *Sullivan*, 136 N. Y. 227 ; *In re Denton*, 137 N. Y. 428.) Assuming that the appellants are correct in their claim that the issue of Richard and Alonzo were by the will to take *per stirpes* and not *per capita*, nevertheless, the share intended for the heirs of the body of Richard passed by inheritance to the children of Alonzo. (*Smith* v. *Scholtz*, 68 N. Y. 41 ; *Bundy* v. *Bundy*, 38 N. Y. 410 ; *Taggart* v. *Murray*, 53 N. Y. 233 ; *Wilkes* v. *Lion*, 2 Cow. 333 ; *Grout* v. *Townsend*, 2 Den. 336 ; *Lott* v. *Wykoff*, 2 N. Y. 355 ; *Jackson* v. *Van Zandt*, 12 Johns. 168 ; *Delaney* v. *McCormack*, 88 N. Y. 174 ; *Kelso* v. *Lorillard*, 85 N. Y. 177 ; *Hennessy* v. *Patterson*, 85 N. Y. 91.) Assuming that no gift is implied to the heirs of Richard and Alonzo, then the children of Alonzo take the entire estate by inheritance. (2 Black. Comm. 175 ; *Schettler* v. *Smith*, 41 N. Y. 328.) Where the scheme of the will fails then the property on the death of the testator vests in his heirs, as in case of intestacy. (*Rice* v. *Barrett*, 102 N. Y. 161 ; *Post* v. *Hover*, 33 N. Y. 598 ; *Savage* v. *Burnham*, 17 N. Y. 574.) The surrogate was right in holding that the legacy to Maria Roberts had lapsed. She was a sister of the testator and died before he did. (3 R. S. 3345, § 20 ; *Van Beuren* v. *Dash*, 30 N. Y. 393 ; *Vernon* v. *Vernon*, 53 N. Y. 351 ; *In re Wells*, 113 N. Y. 396.)

*W. C. Watson* for respondents. The opinion of the surrogate that the $200 legacy to Maria Roberts, a sister of the decedent, who died before him, lapsed, and her heirs are not entitled to it, is right and should be affirmed by this court. (2 R. S. 66, § 52 ; *Van Beuren* v. *Dash*, 30 N. Y. 393 ; *Vernon* v. *Vernon*, 53 N. Y. 351 ; *In re Wells*, 113 N. Y. 396 ; Redf. Surr. Prac. 627.)

HAIGHT, J. The chief question brought up for review involves the construction of a will.

William Moore, a widower, and resident of Clinton county, died on the 4th day of November, 1885, leaving him surviving Richard R. Moore and Alonzo S. Moore, both of whom were unmarried, his only children and heirs at law. Richard R. Moore died on the 17th day of August, 1889, unmarried and leaving no descendants. Alonzo S. Moore, the other son, married after the death of his father, and died on the 13th day of September, 1894, leaving him surviving a widow and two children, William L. Moore and Phebe R. Moore. William Moore left a last will and testament, which was admitted to probate on the 20th day of November, 1885, in which by the seventh clause thereof he gave to his two sons, Richard R. Moore and Alonzo S. Moore, the use and occupancy, during their lives, of all of his real and personal estate, to be equally divided between them after the payment of certain specified bequests; and in case of the death of one of the sons, he gave to the survivor, during life, the use and occupancy of the whole of his real and personal property. He then provided as follows: "After the death of my two sons and their heirs, if they have any, I give my real and personal estate to my sister Susan Bullis, wife of Lewis Bullis; my sister Maria Roberts, wife of John Roberts; to my sister Phebe Oliver, wife of Henry Oliver, and to my brother, Amos Moore, of Plattsburg, their heirs, intending the children of my sisters and my brother to have the said real and personal property. If either of my sisters or brother should die, I give the same to their children, share and share alike."

It will be observed that he does not in direct terms give any estate to the children of his son Alonzo. At the time of his decease, Alonzo had not married. The two children that were subsequently born to him were consequently not in being at the time of the testator's death. He, however, gives his estate to his brother and sisters only after the death of his two sons and their heirs, if they have any, clearly indicating an intention that his brother and sisters should not take under the will until the death of the heirs of the sons. Had the sons died without children, the brother and sisters of the testator would

have been their heirs.   It consequently is apparent that the
heirs of the sons here referred to were intended to be the heirs
of their body, their lineal descendants, including the descend-
ants of the children.   If it was not the intention of the testator
that his brother and sisters should take until after the death of
the heirs of the sons, it would seem to follow that he intended
the estate to vest in such heirs, otherwise it would remain sus-
pended during such period.   They must, therefore, be deemed
to take an estate by implication.   It is contended, however,
that the estate created for the children is a life estate only,
and that the appellants, upon the death of the testator,
became vested with the estate in remainder; that, under the
statute, the testator could only limit the vesting of the remain-
der in possession during the lives of two persons in being,
and that, on the death of the two sons, the third life estate
attempted to be created in their children was unlawful and
void, and that the estate of the remaindermen was accelerated
and took effect in possession upon the death of the longest liver
of the sons.   There is, however, an obstacle in the way which
prevents our approving of this contention.   The statute pro-
vides that "where a remainder shall be limited to take effect
on the death of any person without heirs or heirs of his body,
or without issue, the word 'heirs' or 'issue' shall be con-
strued to mean heirs or issue living at the death of the person
named as ancestor." (1 R. S. 724, § 22.)   The remainder
provided for in the will to the brother and sisters of the tes-
tator, as we have seen, was only to take effect after the death
of his two sons and their heirs, if they have any ; in other
words, it was to take effect after the death of the two sons
without heirs or issue, or if they have heirs or issue, it should
take effect only in case such heirs or issue were not living at
the death of the two sons.   This appears to us to have been
the intention of the testator.   It gives force to each provision
of the will.   He intended to create a remainder in his brother
and sisters after the death of his two sons in case they left no
heirs, or in case their heirs had died during the life of the
sons; but in case the sons left heirs of their body them sur-

77

viving, then such heirs took the entire estate, the realty in fee and the personalty absolutely.

The judgment of the General Term should be affirmed, with costs payable out of the estate.

All concur.

Judgment affirmed.